## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHNNY L.,[1]

      Plaintiff,

      v.                                                                Civ. No. 25-2 SCY

FRANK BISIGNANO,
Commissioner of Social Security,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff argues that the Commissioner committed error when denying his claim for

child's disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. In

relevant part, Plaintiff asserts that the ALJ ignored significantly probative evidence in favor of

disability when evaluating the opinion of treating certified nurse practitioner ("CNP") Cheri

Cerghizan and instead discussed only the evidence that supported the ALJ's position. The Court

agrees that the ALJ did not consider all the material evidence when partially rejecting CNP

Cerghizan's opinion. As a result, the Court GRANTS Plaintiff's Motion to Remand and remands

for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all
proceedings and to enter an order of judgment. Docs. 5, 6, 7. The Court has jurisdiction to review
the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves
discussion of the background, procedural history, and medical records relevant to this appeal for
its analysis.

# APPLICABLE LAW

A.     Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)    If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.    Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes

its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## PROCEDURAL HISTORY

Plaintiff filed an application for child insurance benefits on July 15, 2021, alleging

disability beginning June 22, 2016 (when he was fifteen years old). Doc. 14 at 2-3. He has a

limited education and no past relevant work. *Id.* at 3. Plaintiff has a lengthy history—starting

from at least 2014—of anxiety, depression, and hallucinations including hearing voices and

seeing shadows, indicative of abnormal or psychotic thoughts. Doc. 14 at 3-4.

The ALJ determined that Plaintiff has the following severe impairments: anxiety,

obsessive compulsive disorder (OCD), mood disorder, schizophrenia, and post-traumatic stress

disorder (PTSD). AR 17. The ALJ proceeded past step three, finding no listings were met, and

assigned the following RFC at step four:

> [Plaintiff can] perform a full range of work at all exertional levels but with the
> following nonexertional limitations: being off-task no more than 5% of an eight-
> hour workday (with moderate concentration, persistence, and pace issues),
> occasional interaction with the general public and co-workers, frequent interaction
> with supervisors, no crowds in the immediate workspace of 10 or more,
> occasional adapting to changes in a work setting, understanding, remembering,
> and carrying out simple instructions, and no more than occasional detailed
> instructions during the workday.

AR 20. With this RFC, the ALJ found that jobs that exist in significant numbers in the national

economy that Plaintiff can perform. AR 27.

## FACTUAL SUMMARY

A.     Opinion of Certified Nurse Practitioner Cheri Cerghizan

Plaintiff saw CNP Cerghizan on February 20, 2024, for an initial evaluation. AR 1081.

She wrote:

> Johnny has a prior history of schizophrenia diagnosed in 2014. He described
> symptoms as primarily AH [auditory hallucinations]. Voices are described as
> present throughout the day, there are times voices are louder. Voices described as
> several voices trying to conversate with him. One voice tries to trick him with
> questions. The voice likes to bring up things about his past and his religion.
> Another voice likes to question other peoples motives. VH [visual hallucinations]

> describes as frequently seeing shadows at the corner of his eyes or seeing "things floating". Sometimes has delusions he can read someone mind. Symptoms primarily AH which are better controlled being on medication, but still present.

AR 1082. On mental status examination, his affect was blunted and constricted. AR 1083. In her assessment, CNP Cerghizan observed that Plaintiff was a poor historian. *Id.* She also wrote that "[t]he patient exhibits symptoms of a mental health disorder of such severity that it is causing significant interference with interpersonal relationships and quality of life." AR 1084. She increased his medication dosage of Abilify. AR 1083-84.

Plaintiff saw her again on March 15, 2024, reporting that he continued to struggle with hearing voices and seeing shadows, as well as depression and anxiety. AR 1078. CNP Cerghizan wrote again that "Symptoms primarily AH which are better controlled being on medication, but still present." *Id.* On mental status examination, his affect was again blunted and constricted. AR 1079. CNP Cerghizan ordered medication changes, including increasing his Abilify for hallucinations, delusions, and psychosis. AR 1080. For her assessment, she wrote:

> Patient presents stable for initial evaluation and medication regimen has been helpful, but he continues to struggle with symptoms of depression, anxiety, and AH/VH. He had a dysfunctional upbringing and experienced significant trauma because of abuse by father. The patient utilizes what support system he has. His level of functioning is limited to basic daily routines and he has not been able to sustain employment due to his MH [mental health] disability. There is no SI/HI and the patient is future oriented and motivated for medication management.

AR 1080.

On March 28, 2024, Plaintiff told CNP Cerghizan that he was "doing better," with fewer hallucinations—but they were still present. AR 1076. His affect was still blunted and constricted. *Id.* CNP Cerghizan continued his medications. AR 1077. She still assessed that his "level of functioning is limited to basic daily routines." *Id.* On April 11, he said that he was "okay" and had continued to notice improvement; he reported visual hallucinations and intrusive thoughts but stated they were "not too bothersome." AR 1074. He still had a blunted and constricted

affect. *Id*. On June 20, he was still doing "okay," the hallucinations and intrusive thoughts were "less" but "can 'creep up' and [he] will do reality testing which helps." AR 1066. He still had a blunted and constricted affect. AR 1068. She assessed "[n]o changes in functioning which is limited to basic daily routines." *Id*.

On August 8, 2024, CNP Cerghizan wrote a statement opining that, due to his hallucinations, delusions, and PTSD, Plaintiff could not maintain attention for a two-hour period, that he would require breaks from tasks/work every half-to-one hour, that he would miss work once every week and arrive late once or twice per week due to his mental condition, and that he has increased pain or other physical symptoms due to his mental disorders. AR 1109. She opined that Plaintiff would likely have panic attacks, inappropriate behavior, and crying spells in the workplace, and that certain "abilities and aptitudes" would be occasionally affected, such as understanding and remembering simple and detailed instructions, carrying out detailed instructions, sustaining an ordinary routine independently, interacting with the public/co-workers, and dealing with work-related stress. AR 1110. She opined he would be frequently affected in making simple decisions independently, accepting instructions and responding appropriately to criticism from supervisors, and being aware of normal hazards and taking precautions. *Id*.

The ALJ found this opinion "not persuasive overall, and persuasive only part (partially persuasive)", stating that the more restrictive limitations (that Plaintiff could not maintain attention for a two-hour period, that he would require breaks from tasks/work every half-to-one hour, that he would miss work once every week and arrive late once or twice per week) lack support in the record. AR 25. "[T]he objective findings do[] not support these limitations while the claimant is being treated with medication and therapeutically (see Ex. B27F). His condition

has only improved or stabilized with treatment over time." *Id.* The ALJ stated that, with respect to the other activities CNP Cerghizan opined would be occasionally or frequently affected, "there is little to no objective support in evidence for these limitations" and the RFC adequately accounted for limitations that were supported. *Id.*

      B.    <u>State agency psychological nonexamining consultants</u>

The ALJ also considered the opinions of the state agency psychological nonexamining consultants at the initial and reconsideration stages of Plaintiff's disability application review, Drs. Bonnie Chavez and Mark McGaughey. AR 27, AR 90-91 (Chavez opinion), 117-120 (McGaughey opinion). The ALJ noted that the consultants found Plaintiff "limited by severe mental disorders only [rather than any exertional limitations], but capable of detailed tasks, interacting adequately with coworkers and supervisors, and responding appropriately to changes in a work setting (all without qualification, although moderate social and adaptation limitations were noted)." *Id.* The ALJ found: "The assessments of the State consultants are of limited probative value to the determination of the claimant's residual functional capacity cited above (they are not consistent with the general medical record), and thus not persuasive because the totality of the evidence of record is suggestive of additional limitations that are far more consistent with and supported by such evidence." *Id.*

<u>**ANALYSIS**</u>

On appeal, Plaintiff argues: (1) the ALJ committed reversible error by not adequately explaining his rejection of a treating psychiatric nurse practitioner's opinion (CNP Cheri Cerghizan); (2) the ALJ committed reversible error by failing to explain how or why he departed from a non-examining state agency psychologist's opinion (Doctor Mark McGaughey); and (3) the ALJ erred by deciding, without explanation, that Plaintiff's mental limitations were accounted for by being off task no more than 5% of the time. Doc. 14 at 1. The Commissioner

contends that the ALJ adequately considered both the opinions of CNP Cerghizan and Dr. McGaughey. Doc. 18 at 4. Further, to the extent the ALJ departed from Dr. McGaughey's opinion, the Commissioner asserts the ALJ assessed more workplace restrictions than Dr. McGaughey did and an ALJ does not err in tempering medical opinions for a plaintiff's benefit. Doc. 18 at 6. In short, the Commissioner argues that the ALJ adequately considered both opinions, weighed those opinions, and chose a middle ground between the modest limitations Dr. McGaughey assessed and the more significant limitations CNP Cerghizan assessed. Such weighing, the Commissioner argues, is the core function of the ALJ and, on appeal, this Court cannot usurp the ALJ's core function by reweighing the evidence. Thus, in the Commissioner's view, the Court must defer to the weight the ALJ gave each opinion and the middle ground (less severe than CNP Cerghizan opined and more severe than Dr. McGaughey opined) the ALJ ultimately assessed. Doc. 18 at 10-11.

The Court agrees with the Commissioner that the Court's function is not to reweigh evidence the ALJ has considered. It disagrees with the Commissioner, however, that the ALJ considered the contrasting opinions of two medical source providers, weighed those opinions, and ultimately reached a conclusion about Plaintiff's residual functional capacity that split the difference between those opinions. With regard to CNP Cerghizan, the record does not indicate that the ALJ adequately considered evidence of hallucinations in CNP Cerghizan's records or adequately considered the impact such hallucinations might have on Plaintiff's ability to work. The ALJ's failure to consider, or discuss if he did consider such evidence, constitutes reversible error.

With regard to Dr. McGaughey, the ALJ found Dr. McGaughey to be unreliable. Rather than finding a middle ground between the opinions of Dr. McGaughey and CNP Cerghizan, the

record indicates that the ALJ simply rejected Dr. McGaughey's opinions. Thus, although it may

be that the RFC the ALJ assessed lies between the opinions of Dr. McGaughey and CNP

Cerghizan, the ALJ found Dr. McGaughey's opinions to have "limited probative value", Doc. 8

at 33, and found CNP Cerghizan's opinions "not persuasive overall, and persuasive only part

(partially persuasive)", Doc. 8 at 31. Having found limited value in the opinions of both medical

providers and having not considered or discussed evidence of hallucinations in the record, the

ALJ failed to adequately explain on what evidence the RFC he assessed is based. Accordingly,

the Court agrees with Plaintiff's first argument: the ALJ did not adequately explain his rejection

of CNP Cerghizan's medical opinion. Because acceptance of Plaintiff's first argument requires

remand, the Court does not reach Plaintiff's second and third arguments.

  Records of CNP Cerghizan's treatment of Plaintiff are mostly contained in a set of

documents labeled Exhibit B27F.[4] Plaintiff argues that, as the sole support for his analysis, the

ALJ relies on "a broad reference to Exhibit 27F" and that this broad reference prevents the Court

from following the ALJ's reasoning. Doc. 14 at 14. It is true, as Plaintiff points out, that parts of

the ALJ's opinion generally refer to Exhibit B27F without pin cites. The Court, however, must

consider such general references in conjunction with the more specific medical discussion that

preceded the ALJ's evaluation of CNP Cerghizan's opinion. *Endriss v. Astrue*, 506 F. App'x

772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical

evidence earlier in his decision and he is not required to continue to recite the same evidence

again in rejecting Dr. Wright's opinion."); *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x

718, 721 (10th Cir. 2018) ("While Mr. Webb takes issue with the ALJ's general reference to

---

[4] Exhibit B27F consists of February 20, 2024 to June 20, 2024 records from Guadalupe
Psychiatric and Mental Health Services that are filed in the administrative record from page 1061
to page 1087. Most of these records come from CNP Cerghizan.

medical records 'all discussed above,' in this case it is not difficult to determine what

inconsistencies the ALJ relied upon." (citation omitted)).

     In discussing Exhibit 27F, the ALJ wrote:

> Subsequent medical findings dated April 11, 2024, from Guadalupe Psychiatric
> and Mental Health Services, showed that the claimant's mood was "good" with
> improvement noted on medication, that he would spend the day "taking care of
> his animals," going for walks, playing video games, listening to music, and
> getting creative with improved motivation and interest for usual activities (Ex.
> B27F/14 [AR 1074]). Mental status exam findings further revealed evidence of
> full orientation, a cooperative attitude, no loss of cognition, normal language
> use/speech, intact concentration, normal memory and recall abilities (recalling
> three of three items after a delay), logical and goal-directed thought processes, no
> hallucinations, no suicidal/homicidal ideation, fair judgment/insight, and fair
> abstract thinking, with diagnoses that included PTSD, OCD, anxiety disorder, and
> schizophrenia (B27F/14 [AR 1074]). As of June 20, 2024, the claimant was still
> reporting that "things are okay" and his mental status exam remained unchanged
> since April 2024 (see Ex. B27F/6, 8, 14 [AR 1066, 1068, 1074]).

AR 24.[5] Thus, contrary to Plaintiff's assertion, the ALJ did not simply rely on a "broad reference

to 27F" to find CNP Cerghizan's opinion partially unpersuasive. Doc. 14 at 14.

     It is also true that the ALJ did not discuss every piece of evidence found in Exhibit B27F.

This in itself is not necessarily error—an ALJ is not always required to discuss every piece of

evidence found in an exhibit. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But, as

Plaintiff observes, an ALJ is not allowed to cherry pick evidence that supports his conclusions

while ignoring evidence that contradicts his conclusions. *Id.* at 1010 ("[I]n addition to discussing

the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects."); *Keyes-Zachary*

*v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("The regulations require the ALJ to consider all

evidence in the case record when he makes a determination or decision whether claimant is

---

[5] The ALJ also discussed Exhibit B27F at step 3 of the disability analysis. AR 18-19.

disabled."); *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence").

The Court concludes that the ALJ failed to adequately consider evidence related to Plaintiff's hallucinations. Plaintiff, a schizophrenic, has a long history of hallucinations. As the ALJ acknowledged, from 2016 through 2023, Plaintiff's licensed counselor, R. Kevin Hennelly, MA, LPCC, wrote multiple reports regarding Plaintiff's condition, to include documenting findings of hallucinations. AR 21-24. As a primary basis for rejecting Counselor Hennelly's opinions, the ALJ cited to records from CNP Cerghizan.[6] For instance, the ALJ found Counselor Hennelly's statement that "the claimant's schizoaffective disorder and generalized anxiety disorder and associated symptoms, especially auditory hallucinations, had rendered him 'unable to engage in gainful employment'" to be not persuasive as Counselor Hennelly did not provide a functional assessment of what the claimant can still do in spite of his mental condition and because "the assertion does not appear supported in light of claimant's performance on other exam's of record (see Ex. B27F), the assertion is inconsistent with parts of a residual functional capacity assessment provided by another provider (given in Ex. B30F), and he provided an opinion on the matter reserved for the Commissioner of the Social Security Administration (the ability to engage in employment related activities)."AR 22. Thus, part of the reason the ALJ rejected Counselor Hennelly's assertion that Plaintiff's condition, "especially auditory hallucinations", rendered him unable to work was that Counselor Hennelly's assertion was

---

[6] Plaintiff does not challenge the ALJ's rejection of Counselor Hennelly's opinions. Nonetheless, because the ALJ's rejection of Counselor Hennelly's opinions was partly based on reference to CNP Cerghizan's opinions, the ALJ's discussion about why he rejected Counselor Hennelly's opinions is relevant to whether the ALJ accurately considered CNP Cerghizan's opinions.

inconsistent with the residual functional capacity assessment CNP Cerghizan provided in Exhibit B30F.[7] But the ALJ also rejected CNP Cerghizan's functional capacity assessment. Thus, the ALJ used one rejected assessment as a basis for rejecting another assessment (he rejected Counselor Hennelly's assessments because they were inconsistent with the assessments of CNP Cerghizan), giving rise to the question of what medical assessment the ALJ relied on in arriving at Plaintiff's RFC.

In answering questions on a SSA form related to Plaintiff's mental residual functional capacity limitations (Exhibit B30F), CNP Cerghizan noted that Plaintiff had schizophrenia with "[a]uditory hallucinations/religious content/delusions that he can read minds/multiple voices at once . . . ." AR 1109. She further opined that Plaintiff's condition would cause him to miss work once a week and cause him to arrive to work late or leave work early once or twice a week. *Id.* She also found that he would be limited in interacting with others, would have inappropriate behavior manifesting in the form of outbursts or other distracting behavior, would likely have crying spells in public or in the workplace, and would likely have panic attacks that would be distracting to others in the public or the workplace. AR 1110. Despite rejecting Counselor Hennelly's assertions that Plaintiff could not work based in part on CNP Cerghizan's assertions in Exhibit B30F, the ALJ later contradictorily found the detailed medical opinion CNP Cerghizan provided in Exhibit B30F to be "not persuasive overall, and persuasive only part (partially persuasive)." AR 25.

Similarly, as noted in the above block quote from AR 24, the ALJ relied on CNP Cerghizan's April 11, 2024 records to support his conclusion that Plaintiff was doing well, to

---

[7] Exhibit B30F consists of CNP Cerghizan's responses to a Mental Residual Functional Capacity Questionnaire. AR 1108-11.

include Plaintiff having "no hallucinations". AR 24. A review of CNP Cerghizan's records,

however, indicates that Plaintiff continued to have hallucinations while CNP Cerghizan treated

him. CNP Cerghizan's April 11, 2024 report summarizes Plaintiff's mental health history, to

include his diagnosis of schizophrenia in 2014, his having auditory hallucinations "present

throughout the day", having "several voices trying to conversate with him. One voice tries to

trick him with questions. The voice likes to bring up things about his past and his religion.

Another voice likes to question other people's motives. VH [visual hallucination] describes as

frequently seeing shadows at the corner of his eyes or seeing 'things floating'. Sometimes has

delusions he can read someone['s] mind. Symptoms primarily AH [auditory hallucinations]

which are better controlled being on medication, but still present." AR 1074. Related to his

present condition, CNP Cerghizan reports Plaintiff as saying, "he is taking his medication and

continues to notice improvements . . . Says voices are about religious content and some VH and

intrusive thoughts but not too bothersome." *Id*. In the "Assessment" portion of the report, CNP

Cerghizan writes, "Medication continues to be effective, and patient's mood and motivation

continue to improve, and hallucinations persist but have been milder." AR 1075.

CNP Cerghizan's reports from other examinations of Plaintiff further document ongoing

hallucinations. AR 1066 (June 20, 2024 report stating, "Says the following symptoms are less

but can 'creep up' and will do reality testing which helps >> voices are about religious content

and some VH and intrusive thoughts but not too bothersome"); AR 1070 (May 21, 2024 report

stating, "Says the following symptoms are a little less and he can tune them out and be more

present >> voices are about religious content and some VH and intrusive thoughts but not too

bothersome"); AR 1072 (May 9, 2024 report stating, "Says the following symptoms are a little

less and he can tune them out and be more present >> voices are about religious content, and

some VH and intrusive thoughts but not too bothersome"); AR 1076 (March 28, 2024 report stating, "since medication adjustments he is still a little depress[ed] / anxious but more motivated and interested in doing things and hallucinations/AVH are less"); AR1078 (March 14, 2024 report stating, "Says he still struggles with hearing voices and seeing shadows . . . but feels the current regimen has helped to improve his symptoms"). On Plaintiff's February 20, 2024 intake to the Guadalupe Psychiatric and Mental Health Services his initial assessment included the following: "He described symptoms as primarily AH. Voices are described as present throughout the day, there are times voices are louder. Voices described as several voices trying to conversate with him. One voice tries to trick him with questions. The voice likes to bring up things about his past and his religion. Another voice likes to question other people[']s motives. VH describes as frequently seeing shadows at the corner of his eyes or seeing 'things floating'. Sometimes has delusions he can read someone['s] mind. Symptoms primarily AH which are better controlled being on medication, but still present." AR 1082.

Granted, CNP Cerghizan's reports also contain  mental status examinations ("MSE") that reflect Plaintiff was not experiencing hallucinations at the time of his appointments with CNP Cerghizan. The MSEs of the various reports of examinations with CNP Cerghizan contain the following language: "Thought content: Denies current auditory, visual or tactile hallucinations. No delusions at this time." *See e.g.*, AR 1076. Although the ALJ is entitled to rely on medical evidence such as MSEs, he did not weigh this evidence against the information in CNP Cerghizan's reports about ongoing hallucinations contemporaneous with treatment visits.

The ALJ did not discuss the language in CNP Cerghizan's reports regarding hallucinations or even acknowledge that CNP Cerghizan's exam records represent that Plaintiff

reported ongoing hallucinations.[8] Similarly, in finding CNP Cerghizan's August 8, 2024 Mental

Residual Functional Capacity Questionnaire (Exhibit B30F, referenced above) to be "not

persuasive overall", the ALJ did not discuss evidence of hallucinations at all. Therefore, in

assessing Plaintiff's limitations, the Court cannot be confident the ALJ considered the impact of

Plaintiff's hallucinations on his ability to work.

       The Commissioner attempts to address this problem by arguing that the Court cannot

view CNP Cerghizan's records in isolation. The Commissioner argues the ALJ did consider CNP

Cerghizan's records and partially adopted CNP Cerghizan's opinions by concluding Plaintiff had

limitations somewhere in between those CNP Cerghizan assessed and those Dr. McGaughey

assessed. Plaintiff's complaint about the ALJ's handling of CNP Cerghizan's opinions, the

Commissioner asserts, amounts to second guessing the weight the ALJ decided to provide to

medical providers such as CNP Cerghizan and Dr. McGaughey. The Commissioner argues:

"Plaintiff puts forth a different interpretation of the record evidence, contending it supports, and

is consistent, with CNP Cerghizan's opinion." Doc. 18 at 10. But, the Commissioner contends,

"this goes to the weight of the evidence, not its sufficiency, and Plaintiff is thus merely asking

this court to weigh the evidence differently than the ALJ, which it may not do." *Id.*

---

[8] The ALJ did note two instances in the record where Plaintiff did not present to medical providers with hallucinations. The first instance involved a July 18, 2019 follow up exam for a non-mental health related issue (acute hypertrophy of nasal turbinates and alleged difficulty breathing, mild general pain, and a skin rash). AR 22, 702. At the time of this examination, Plaintiff denied having hallucinations. The second instance involved an April 4, 2023 follow-up to an emergency room visit for vomiting. AR 23. The ALJ found this exam noted complaints of "auditory hallucinations ('voices telling him he has no net worth')" but an absence of "observable delusions/hallucinations"). AR 24. The Commissioner does not argue that the ALJ's recognition that Plaintiff did not experience hallucinations during these two visits justifies the ALJ's failure to discuss CNP Cerghizan's records related to Plaintiff's hallucinations.

In contrast to the limitations CNP Cerghizan assessed and which the ALJ found to be too severe, the Commissioner represents that the ALJ found the limitations Dr. McGaughey assessed to understate Plaintiff's true limitations. Thus, the Commissioner writes, "in evaluating the opinion evidence of record, the ALJ concluded Dr. McGaughey did not assign enough workplace restrictions to account for Plaintiff's limitations while CNP Cerghizan assessed too many restrictions (Tr. 24-25, 27). The ALJ ultimately chose a middle ground . . . . Stated differently, after his review of the entirety of the record, the ALJ addressed both positive and negative findings, reconciled conflicting evidence, and explained the reasoning behind his findings." Doc. 18 at 12. Such weighing, the Commissioner argues, is the job of the ALJ and, unless the ALJ's findings lack substantial evidence, they are not subject to reweighing and should not be disturbed on appeal.

If this case truly presented a situation where an ALJ weighed two conflicting, but supportable, medical opinions and then found that a claimant's limitations fell somewhere between those opinions, the Court agrees that the ALJ's decision should be left undisturbed. This case, however, presents a different situation.

First, the ALJ neither endorsed the opinion of CNP Cerghizan nor the opinion of Dr. McGaughey. Of CNP Cerghizan, the ALJ wrote that her "detailed medical opinion is not persuasive overall, and persuasive only part (partially persuasive)." AR 25. Of Dr. McGaughey, the ALJ provided a much less detailed assessment of this opinion than the Commissioner does on appeal. *Compare* AR 27, *with* Doc. 18 at 5.[9] The ALJ lumped Dr. McGaughey in with the state agency nonexamining consultant at the initial level, and rejected both opinions for the same

---

[9] To the extent the Commissioner makes arguments about evidence the ALJ could have relied on, but did not, the Court does not consider such evidence in its own analysis.

reason: "because the totality of the evidence of record is suggestive of additional limitations that are far more consistent with and supported by such evidence." AR 27. Although it may be true that the ALJ ultimately assessed Plaintiff to have limitations less than those CNP Cerghizan assessed and more than Dr. McGaughey assessed, the ALJ's ultimate assessment, whatever it may be, must be based on medical evidence (either record evidence or opinion evidence the ALJ found persuasive). Absent reference to medical opinion evidence an ALJ has found reliable or other record evidence, an ALJ's opinion about a Plaintiff's limitations lacks the requisite medical foundation.

With respect to the medical opinion evidence, the ALJ's discussion does not suffice. Here, although the ALJ sets forth much of the medical opinion evidence he rejects, he does not set forth medical opinion evidence that he accepts. To the contrary, he rejected the opinions of Counselor Hennelly, found CNP Cerghizan's opinions about Plaintiff's limitations to be "not persuasive overall, and persuasive only part (partially persuasive)", and found the opinions of the State agency consultants, including Dr. McGaughey, to be "of limited probative value." Having mostly rejected the opinions of each of these medical providers, the ALJ does not explain on whose opinion he does rely, or which parts of the opinions he did find persuasive. Although the Commissioner argues the ALJ relied on Dr. McGaughey's opinion, this argument is inconsistent with the ALJ's short, one-paragraph discussion of "reports from State Agency (DDS) consultants" and the ALJ's determination that those reports are "of limited probative value." AR 27.

With respect to other record evidence, as the Commissioner argues (Doc. 18 at 12), the ALJ did rely on some evidence that would support his RFC—such as the April 11, 2024 visit reflecting that Plaintiff's mood was "good" with improvement noted on medication, and that he

would spend the day taking care of his animals, going for walks, playing video games, listening to music, and getting creative with improved motivation and interest for usual activities. AR 24. That a condition has improved, however, says little about its starting point or current state. Although evidence in the record does indicate that Plaintiff's symptoms improved with medication, the ALJ does not discuss the level to which those symptoms improved or what impact the current level of those symptoms might have on Plaintiff's ability to work.

More problematically, the ALJ did not acknowledge that the record also indicates that Plaintiff, a schizophrenic, has at various times suffered from severe hallucinations. A major consideration in determining whether Plaintiff has the capacity to work is the extent and prevalence of his hallucinations. When summarizing the record as a whole (not just CNP Cerghizan's records), the ALJ found "there is insufficient and/or little to no evidence to discern any chronic symptoms and/or functional deficits associated with allegations and complaints of . . . auditory hallucinations (with adequate treatment)." AR 26. In contrast to this finding, the overall record, including records from CNP Cerghizan, documents a chronic history of auditory hallucinations that the ALJ did not discuss.

In sum, the Court agrees with the Commissioner that its function is not to reweigh evidence the ALJ has weighed or to second-guess the ALJ's conclusion. But a review of an ALJ's decision must leave the Court confident that an ALJ has at least placed factors that must be weighed on the scale. The question is not whether substantial evidence supports the ALJ's opinion, but whether the ALJ committed error in ignoring significantly probative evidence. Here, the Court is not confident that the ALJ placed evidence of Plaintiff's hallucinations on the scale. The Court thus reverses and remands for a proper analysis of CNP Cerghizan's opinion after considering all the medical evidence in support of the opinion.

The Court does not reach the remaining issues raised by Plaintiff because they may be affected by the ALJ's treatment of this case on remand. *Cf. Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand is GRANTED. This case is remanded to the agency for rehearing in accordance with this opinion.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**